# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | Matthew F. Kennelly |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4590 | **DATE** | 7/28/2000 |
| **CASE TITLE** | CSC HOLDINGS, INC.., ET AL -VS- GALAXY ELEC INC., ET AL. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. On July 28, 2000 this Court, sitting as Emergency Judge, issued an ex parte temporary restraining order against the defendant in this case. The purpose of this Memorandum is to explain the court's decision not to enter certain aspects of the order requested by plaintiff.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | AUG 1 0 2000 date docketed | |
| ✓ | Docketing to mail notices. | | 6 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| OR6 | courtroom deputy's initials | ED-7 FILED FOR DOCKETING 00 AUG -8 PM 3:27 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **CSC HOLDINGS** | )<br>) |
| **Plaintiff,** | )<br>) |
| vs. | ) Case No. 00 C 4590<br>) |
| Galaxy | )<br>) |
| **Defendants.** | )<br>) |

DOCKETED
AUG 1 0 2000

## MEMORANDUM CONCERNING ISSUANCE OF TEMPORARY RESTRAINING ORDER

MATTHEW F. KENNELLY, District Judge:

On July 28, 2000, this Court, sitting as Emergency Judge, issued an *ex parte* temporary restraining order against the defendants in this case.[1] The purpose of this Memorandum is to explain the Court's decision not to enter certain aspects of the order requested by plaintiff.

The plaintiff operates cable television systems throughout the United States. To secure its product, which consists mainly of copyrighted works, plaintiff encodes or scrambles the premium and pay-per-view programming services that it transmits and provides subscribers who purchase these services with a converter that is programmed to descramble only those programming services that the customer has purchased.

In December 1999, plaintiff began an investigation of defendants, a corporation and its suspected principals, after learning that they were selling descrambling devices. Plaintiff

---

[1] The Court also granted plaintiff's request to file the case under seal pending service of the restraining order.



conducted an undercover investigation, which included purchases of the devices from defendants. It then tested the devices and determined that they were designed to descramble all of the scrambled premium and pay-per-view programming services offered by plaintiff. The manufacturer of the devices analyzed the devices purchased from defendants and determined that they had been altered to permit them to receive without authorization all of plaintiff's scrambled premium and pay-per-view services.

The Communications Act provides that no person shall intercept or receive, or assist in intercepting or receiving, any communications services offered over a cable television system unless authorized to do so by the cable operator. 47 U.S.C. §553(a)(1). "Assisting" is defined as including the manufacture and sale of equipment intended for unauthorized reception of cable television service. *Id.* §553(a)(2). The legislative history of the statute indicates that §553(a)(2) was intended to prevent the manufacture and distribution of unauthorized descrambling devices like those allegedly offered by defendants. H.R. Rep. No. 934, 98th Cong., 2d Sess. 84 (1984), *reprinted in* 1984 U.S. Code Cong. & Admin. News 4655, 4721.

Section 553(c)(1) permits a person aggrieved by a violation of §553(a)(1) to bring a civil action in federal court. Section 553(c)(3) allows the plaintiff to recovery actual damages as well as the defendant's profits, as well as a penalty. Section 553(c)(2) permits the issuance of a temporary injunction to prevent violation of §553(a)(1). On July 27, plaintiff filed this action against the defendants seeking damages, disgorgement of profits, and penalties, and it also filed an *ex parte* motion for a temporary restraining order. As indicated earlier, the motion for temporary restraining order came before this Court, sitting as Emergency Judge.

In the motion, plaintiff sought an *ex parte* order to: 1) restrain defendants from offering or

selling descrambling devices; 2) restrain them from destroying their books and records, including financial records; 3) freeze their assets; 4) direct them to identify within one day all their assets, including any held within the prior year; 5) grant plaintiff expedited discovery from the defendants, their accountants, and others acting on their behalf; 6) direct defendants to provide, within two days, an accounting of all sales and purchases of descrambling devices from 1995 to the present, including profits, transfers, and withdrawals of assets; 7) authorize and direct the United States Marshal to enter defendants' business premises (using force if necessary) and seize all of their records, including computer hard drives, servers, disks, and tapes, as well as examples of the descrambling devices; 8) direct defendants to disclose, at the time of the seizure, any other location where they have records or descrambling devices; and 9) authorize and direct the United States Marshal to go to the places identified by defendants, enter them (using force if necessary) and seize any records located there.

Plaintiff's request for *ex parte* consideration of the motion was amply supported, as required by Fed. R. Civ. P. 65(b), by affidavits indicating that if plaintiff were required to give notice of the order, there would be a significant risk that defendants would destroy or conceal the descrambling devices, their books and records, and/or their assets. The Court likewise concluded that plaintiff had demonstrated all of the factors necessary to obtain a temporary restraining order barring defendants from selling the devices; permitting plaintiff, via the United States Marshal, to enter defendants' premises and seize records; and to freeze defendants' assets for a brief period until a full hearing could be held. *See* Fed. R. Civ. P. 65(b) (temporary restraining order

issued *ex parte* may last no more than ten days).[2]

The Court declined, however, to enter several aspects of the *ex parte* order requested by plaintiff, specifically, the proposed provisions directing defendants to disclose their assets, to make an accounting of their purchase and sales of the descrambling devices, and to disclose locations other than the one already known to plaintiff where defendants might have records or more of the devices. The purpose of this Memorandum is to explain why the Court declined to do these things.

As disclosed by plaintiff in its *ex parte* motion, the sale of decoding devices like those defendants are claimed to have offered and sold is prohibited by federal criminal statute, *see* 47 U.S.C. §553(b), as well as by Illinois criminal statute, *see* 720 ILCS 5/16-10(a)(4). Under the circumstances, information disclosing defendants' purchases and sales of the devices, the revenues obtained from those sales, the assets they now have that may have been derived from those sales, and the locations where they keep their records and other descrambling devices is, without question, information that might tend to incriminate the defendants. *See, e.g., FTC v. H.N. Singer, Inc.*, 668 F.2d 1107, 1114 (9th Cir.1982) (recognizing that preliminary injunction requiring defendant to disclose records might implicate Fifth Amendment); *SEC v. Rehtorik*, 755

---

[2] In *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 119 S.Ct. 1961 (1999), the Supreme Court held that a district court has no authority to issue a preliminary injunction to prevent a defendant from disposing of its assets pending adjudication of the plaintiff's claims for monetary damages. The Court acknowledged, however, that in a suit seeing equitable relief, a restraint on transfer of assets may be appropriate to preserve the *status quo*. *Id.* at 1971-72. Section 553(c)(3)(A)(i) provides for "damages" consisting of disgorgement of the defendant's profits, an equitable remedy, making a temporary asset freeze permissible under the law. *See CSC Holdings, Inc. v. KDE Electronics Corp.*, No. 99 C 1556, 2000 WL 204005, at *2 (N.D. Ill. Mar. 13, 2000) (Pallmeyer, J.); *see also, e.g., United States ex rel. Rahman v. Oncology Associates, P.C.*, 198 F.3d 489, 498 (4th Cir. 1999).

F. Supp. 1018, 1019 (S.D. Fla. 1990) (order compelling accounting in civil case "would directly impinge [defendant's] right against self-incrimination"); *SEC v. College Bound, Inc.*, 849 F. Supp. 65, 67 (D.D.C. 1994) (compelled accounting implicates defendants' Fifth Amendment privilege); *In re Interbanque, Inc.*, No. 95-364, 1996 WL 762330, at *5-6 (Bankr. D.D.C. 1996) (same). *See generally United States v. Hubbell*, 120 S.Ct. 2037 (2000) (Fifth Amendment protects individual from responding to subpoena for broad categories of business records absent grant of immunity).

There is no question that an accounting is an equitable remedy traditionally available in cases in which the defendant holds or held an asset in which the plaintiff has an interest. Here, however, plaintiff sought a road map to locate potentially incriminating evidence. And it sought this remedy *ex parte*. Had the Court granted the order plaintiff sought, the United States Marshal would have sent his deputies to defendants' place of business, and at the same time the Deputy Marshals were seizing the defendants' records, computers, and descrambling devices (by force if necessary), they would have served defendants with a court order, signed by a federal judge, *requiring* the defendants to disclose potentially incriminating information. Though an accounting is a remedy that has long been available in courts of equity, the potential for criminal prosecution and the circumstances under which an *ex parte* order of this type is obtained and would have been served make what plaintiff sought different in kind, and not simply in degree, from an accounting ordered at a more advanced stage of litigation, after the adversary process has run its course.

It is difficult for this Court to imagine how an *ex parte* court order compelling the

individual defendants[3] to provide such information can coexist with the Fifth Amendment. When the Court posed this issue to plaintiffs' counsel at the time they presented their motion, counsel initially responded that the defendants, upon service of the order, certainly would have the right to decline to provide the information if they chose to do so. But as indicated above, the order is designed to be served in conjunction with a forced entry upon defendants' premises conducted by federal law enforcement agents – an inherently coercive encounter. It is highly unlikely that an ordinary citizen, confronted with such a show of force and served with a federal court order directing him to provide information (some of it immediately), would have the faintest idea that he had the right to refuse to do so. Certainly nothing within the order proposed by plaintiff directed the agents to advise the defendants of their constitutional right to refuse to provide the information, and even if such a provision were added (an option the Court also considered), the same ordinary citizen might not be expected to understand such advice from a law enforcement agent as trumping a judge's order directing disclosure.

The Court has also examined the authorities cited by plaintiffs to support the proposition that expedited discovery is appropriate in a "cable piracy" case like this one; none of these cases address the Fifth Amendment implications of ordering an individual, as part of an *ex parte* restraining order, to provide potentially incriminating information. *See Time Warner Cable of New York City v. M.D. Electronics, Inc.*, 101 F.3d 278 (2d Cir. 1996); *Time Warner Cable of*

---

[3] A corporation does not have a Fifth Amendment privilege. *See, e.g., Braswell v. United States*, 487 U.S. 99, 106-07 (1988). An individual who serves as the corporation's custodian of records may be compelled, consistent with the Fifth Amendment, to produce the corporation's records, but no evidentiary use of the act of production may be made against that individual. *Id.* at 117-18.

*New York City v. Freedom Electronics,* 897 F. Supp. 1454 (S.D. Fla. 1995); *Century ML-Cable Corp. v. Carrillo-Diaz,* 43 F. Supp. 2d 166 (D.P.R. 1998); *Intermedia Partners Southeast v. QB Distributors,* 999 F. Supp. 1274 (D. Minn. 1998); *TKR Cable Co. v. Cable City Corp.,* No. 96-2877, 1996 WL 465508 (D.N.J. July 29, 1999). If plaintiff serves discovery requests seeking the information that the Court refused to compel, the individual defendants will at least have time to consider the requests, consult with counsel, and determine whether they ought to assert their privilege against self-incrimination.

                                                                                   _____
                                                                                  MATTHEW F. KENNELLY
                                                                                  United States District Judge

Date:   July 28, 2000